KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (509) 758-9820
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, | ) ) ) | CASE NO. CV 10-284 |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| RAFTER SQUARE, L.L.C., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council and for a cause of action

against the Defendant Rafter Square, L.L.C. states and alleges as follows:

### NATURE OF THE ACTION

1.  This is an action brought by the above-named Plaintiff for declaratory judgment,

permanent injunctive relief and damages on the following bases:

       a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

VERIFIED COMPLAINT AND       1
DEMAND FOR JURY TRIAL

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604(f)(1);

ii. Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604(f)(2);

iii. Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f)(3)(B);

iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

v. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq., and in particular 24 C.F.R. §100.202(c) which prohibits inquiry into the nature or severity of an applicant's disability.

c.  Negligence.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in and concern real property located in the City of Lewiston, County of Nez Perce, State of Idaho.

## PARTIES

3.  The Plaintiff Intermountain Fair Housing Council (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

2

its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff serves housing consumers through, among other things, education on the fair housing laws and assistance with complaints.

4.   The Defendant Rafter Square, L.L.C. (hereinafter "Defendant"), is a business organized under the laws and doing business in the State of Washington.  Its principal place of business is 2338 Florance Lane, Clarkston, Washington 99403.  The Defendant is the owner of Hillcrest Apartments located at 501 Airway Avenue, Lewiston, Nez Perce County, Idaho 83501 (hereinafter "the Subject Property"), the real property that is the subject of this proceeding.

<u>STANDING OF PLAINTIFF</u>

5.   The Plaintiff has suffered damages as the result of the Defendant's actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

6.   The Plaintiff's mission, as described above, has been frustrated by the Defendant's practices because the Defendant's violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

7.   The Plaintiff's mission has further been frustrated as the Defendant's violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

VERIFIED COMPLAINT AND                   3
DEMAND FOR JURY TRIAL

8.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendant's violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendant's violations of the FHA through the monitoring of the Defendant's activities, publication and advertising costs, and the sponsorship of educational activities.

9.  As a direct result of the Defendant's actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).

10.  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

## GENERAL ALLEGATIONS

11.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-10 above.

12.  T.J. is handicapped, as that term is defined at 42 U.S.C. §3602(h).  As a result of T.J.'s handicap, she requires the assistance of a service animal.  T.J.'s service animal is a cat.

13.  On or about the 5th day of July, 2009, T.J. applied for a dwelling at that Subject Property that was currently available for rent by the Defendant.  T.J. visited the Subject Property and viewed the dwelling for which she applied, but was told by an agent for the Defendant that she could not reside at the Subject Property with an animal.  T.J. requested a reasonable accommodation of the Defendant, stating that she is disabled and that her animal is a service

VERIFIED COMPLAINT AND          4
DEMAND FOR JURY TRIAL

animal which is prescribed for her disability.  The Defendant refused to make reasonable

accommodations for T.J. in its rules, policies, practices, or services, and refused to rent a

dwelling at the Subject Property to T.J. due to the presence of her service animal.

14.  On or about the 6th day of July, 2009, T.J.'s disability therapy technician C.G.

contacted the Defendant on behalf of T.J. and spoke with Shirley Dimke, owner of the

Defendant, regarding the Defendant's failure to reasonably accommodate T.J. and the

Defendant's refusal to rent a dwelling to T.J.

15.  C.G. informed Ms. Dimke that T.J. has a right to have a service animal pursuant to

the Fair Housing Act as a reasonable accommodation.  Ms. Dimke told C.G. "I don't believe in

service animals, I think that it is just an excuse to have a pet."

16.  C.G. told Ms. Dimke that T.J. will file a fair housing complaint if the Defendant

refuses to rent her a dwelling because of her service animal.  Ms. Dimke inquired into the nature

of T.J.'s handicap and told C.G. "she just wants to get people in trouble.  I don't need tenants

that want to cause problems."

17.  As a result of the Defendant's discriminatory conduct, T.J. suffered severe

depression, anxiety, and humiliation, and T.J. required a heightened level of services from C.G.,

including basic house-keeping and personal hygiene tasks.

18.  T.J. filed a complaint of housing discrimination with the Plaintiff.  The Plaintiff

investigated T.J.'s complaint and conducted a telephonic test of the Defendant on or about the 9th

day of July, 2009 to determine whether there is further evidence to support T.J.'s allegations.

The Plaintiff's tester contacted the Defendant and spoke with Debra (last name currently

unknown) regarding dwellings advertised for rent in the Lewiston Morning Tribune, Display Ad

No. 487033 published in its on-line edition on the 9th day of July, 2009.  During the course of the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

5

test, the Plaintiff's tester informed Debra (last name currently unknown) that she has a service animal prescribed by her doctor for her disability.  In response, Debra (last name currently unknown) denied the dwelling to the Plaintiff's tester and told the Plaintiff's tester "oh no, I'm sorry we don't take animals at all."

19.  As a result of the Plaintiff's investigation, it filed an administrative complaint with the United States Department of Housing and Urban Development (hereinafter "HUD") pursuant to 42 U.S.C. §3610 on the 28th day of July, 2009.  Said administrative complaint remained pending with HUD until the 4th day of January, 2010, when the Plaintiff withdrew the complaint for the reason that the parties failed to reach a conciliated settlement of the matter and the Plaintiff opted to seek a judicial remedy pursuant to 42 U.S.C. §3613 in order to expedite resolution of this matter.

20.  Due to the ongoing nature of the Defendant's conduct, said conduct constitutes a continuing violation.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

21.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-20 above.

22.  The Defendant has discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

23.  The Defendant has discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

24.  The Defendant has refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford T.J. equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

25.  The Defendant made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap".  42 U.S.C. §3604(c).

26.  The Defendant has engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§3603 and 3604.

27.  The Defendant has made impermissible inquires into the nature or severity of an applicant's disability.  24 C.F.R. §100.202(c).

28.  Such conduct is willful and intentional, and taken in reckless or callous indifference for the rights of the victims.

## COUNT TWO—NEGLIGENCE

29.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-28 above.

30.  The Defendant owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to T.J. when she applied for housing at the Subject Property.

31.  The Defendant owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff when it performed its test of the Defendant regarding the Subject Property.

32.  It could have been reasonably anticipated or foreseen by the Defendant that its failure to use reasonable care might result in injury to the Plaintiff and to T.J.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

7

33.  The Defendant was negligent in that it failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to T.J. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq., as well as its implementing regulations provided at 24 C.F.R. §100 et seq.

<u>DAMAGES</u>

34.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-33 above.

35.  As the result of the actions and omissions of the Defendant, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

36.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

37.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $9,467.00, which continue to accrue.

38.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $7,000.00.

39.  The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

40.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $17,467.00.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

41.  In addition to the injuries suffered by the Plaintiff, the Defendant has also caused significant and irreparable loss and injury to T.J and to a number of as-of-yet unidentified persons.

42.  Said victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

43.  All victims of the Defendant's actions and conduct should be identified and compensated through a Victims' Compensation Fund.

44.  A Victims' Compensation Fund should be established in an amount to be determined after further litigation and completion of discovery in order to compensate T.J. and as-of-yet unidentified victims of the Defendant's discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

  a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendant on a monthly basis.

  b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendant shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendant deposits funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 2500 Kootenai Street, Boise, Idaho 83705; (2) Co-Ad, Inc., 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 124 East Third Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

f.   Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The Plaintiff will inform the Defendant in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendant shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h.   After receiving the Defendant's refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendant.  When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendant shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court.  In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including

VERIFIED COMPLAINT AND                         11
DEMAND FOR JURY TRIAL

accrued interest and after deducting compensation to the Plaintiff as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendant from all claims related to the Subject Property.

i.   In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.  Said education fund shall be administered by the Idaho Housing and Finance Association.

j.   The Defendant shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

45.  The Court should award to the Plaintiff and against the Defendant punitive damages due to the intentional and willful nature of the Defendant's conduct in the amount of $10,000.00.

46.  The Court should enjoin the Defendant, its officers, employees, agents, successors, and all other persons in active concert or participation with said Defendant, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

47.  The Court should award to the Plaintiff and against the Defendant reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council prays that the Court enter judgment against the Defendant as follows:

VERIFIED COMPLAINT AND                    12
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

A.  That the Court find and declare that the actions and omissions of the Defendant constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $9,467.00, which continue to accrue;

C.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $7,000.00;

D.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $17,467.00;

F.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined after further litigation and completion of discovery, as determined by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 44 above;

G.  That the Court award to the Plaintiff and against the Defendant punitive damages due to the reckless or callous nature of the Defendant's conduct in the amount of $10,000.00;

H.  That the Court enjoin the Defendant, its officers, employees, agents, successors, and all other persons in active concert or participation with said Defendant, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendant reasonable attorney's fees and costs incurred in this action;

VERIFIED COMPLAINT AND                13
DEMAND FOR JURY TRIAL

J.  That the Court order any further and additional relief as the interests of justice may

require.

JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury on all issues.

DATED this _____7th_____ day of _____June_____, 2010.


_____/s/_____

KEN NAGY
ATTORNEY FOR PLAINTIFF

VERIFIED COMPLAINT AND                14
DEMAND FOR JURY TRIAL

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/ s /
_____
RICHARD MABBUTT


STATE OF I D A H O   )
                     : ss
County of _____ )

I, _____, a Notary Public for said state, does hereby certify that on the _____ day of _____, 2010, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

SEAL

/ s /
_____
Notary Public in and for the State of _____
Residing at: _____
My commission expires: _____

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

## APPENDIX A:

## PLAINTIFF'S MEMORANDUM OF DAMAGES

*Intermountain Fair Housing Council v. Rafter Square, L.L.C.*

Plaintiff:                          Intermountain Fair Housing Council

Attorney for Plaintiff: Ken Nagy
                         Attorney at Law
                         P.O. Box 164
                         Lewiston, Idaho 83501
                         (208) 301-0126
                         Fax:  (509) 758-9820
                         E-mail: knagy@lewiston.com

Defendant:                          Rafter Square, L.L.C.

Date Prepared:                      June 3, 2010

The Plaintiff has identified four categories of damages that it has suffered as the result of the Defendant's failure to comply with the FHA.  These categories are: (1)  Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

---

[1]*See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair

VERIFIED COMPLAINT AND                16
DEMAND FOR JURY TRIAL

The following represents an itemization of the Plaintiff's damages:

**1.  Out-of-Pocket Expenses and Past Diversion of Resources**

The Plaintiff has incurred significant pre-litigation expenses as a result of the Defendant's discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff has sponsored training workshops in the Defendant's geographic area, and has engaged in site monitoring, investigation, complaint preparation, counseling and other activities with regards to this matter.  As a result of these activities, it has incurred expenses as follows:

    a.  Investigation and Counseling Costs:              $2,532.00

    b.  Educational efforts:                            $5,101.00

    c.  Cost of Deferred Actions:                  $1,834.00

                Total Past Diversion of Resources:    $9,467.00

Further litigation of these matters will result in an increase in the Plaintiff's diversion of resources, as well as other damages.

**2.  Future Diversion of Resources**

The Plaintiff has an affirmative duty to ensure the Defendant's ongoing compliance with the FHA, with regards to both the subject property as well as any future developments in which the Defendant may participate.  Such monitoring activities include site visits, training of Defendant and its employees and agents, counseling of victims, and testing.

The Plaintiff expects to incur the following expenses as a result of the current violations:

    a.  Future Advertising Costs:                  $2,500.00

---

housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

VERIFIED COMPLAINT AND          17
DEMAND FOR JURY TRIAL

b.  Cost of future training:                                    $1,500.00

c. Costs of Future Monitoring/Testing:                          $ 3,000.00

                    Total Future Diversion of Resources:     $7,000.00

### 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff to divert limited resources and manpower away from grant-writing activities.  The Plaintiff could reasonably expect to have obtained funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendant's actions

a.  Loss of Funding:                                            $1,000.00

### 4.  Frustration of Mission

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendant's discriminatory actions, the Plaintiff's mission of furthering fair housing has been significantly frustrated, and the Plaintiff has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff in guaranteeing fair housing to all residents of the state.  The Plaintiff has determined that it will be necessary to

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendant's failure to comply with the FHA.

The Plaintiff measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                            $17,467.00

## **TOTAL DAMAGES**

The Council calculates its total damages in this proceeding as follows:

    1.  Out-of Pocket Expenses and Past Diversion of Resources:     $9,467.00

    2.  Future Diversion of Resources:                       $7,000.00

    3.   Lost Economic Opportunity:                         $1,000.00

    4.   Frustration of Mission:                             $17,467.00

                                         Total Damages:     $34,934.00

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

*Intermountain Fair Housing Council v. Rafter Square, L.L.C.*

Plaintiff:                      Intermountain Fair Housing Council

Attorney for Plaintiff: Ken Nagy
                      Attorney at Law
                      P.O. Box 164
                      Lewiston, Idaho 83501
                      (208) 301-0126
                      Fax:  (509) 758-9820
                      E-mail: knagy@lewiston.com

Defendant:                 Rafter Square, L.L.C.

Date Prepared:            June 3, 2010

---

# I.  INTRODUCTION

In addition to the damages incurred by the Plaintiff, a number of as-of-yet unidentified victims have also suffered damages as the result of the Defendant's discriminatory actions.  In furtherance of the Plaintiff mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has previously ordered the establishment of a Victims' Compensation Fund in actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. 4:07-cv-500 (Consent Decree entered May 29, 2008, Doc. 21) (establishing Settlement Fund to compensate unidentified victims in the amount of $12,500); *United States of America  v. Thomas Development Co., et al.*, Case No. 3:02-cv-00068 (Consent Order entered March 11, 2005, Doc. 85) (establishing Settlement Fund to compensate unidentified victims in the amount of $100,000.00).

VERIFIED COMPLAINT AND                    20
DEMAND FOR JURY TRIAL

Said orders, however, do not contain a description of how the amount of such a fund was calculated.  The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

**1.  Underlying Principles**

A.  The number of units that are managed by the Defendant is currently unknown and should be determined through discovery.

B.  The number of months that the Defendant has managed property that is subject to the requirements of the Fair Housing Act is currently unknown and should be determined through discovery.

C.  It can reasonably be expected that, on average, at least one applicant for rental housing of the Defendant encountered discrimination for each available unit managed by the Defendant each year.

D.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act has frequently been $10,000.00.

E.  The Plaintiff is the organization best equipped and situated to administer the fund.

F.  The Plaintiff should be compensated at its operational rate of $45.88 per hour in the administration of the fund.

G.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be twelve hours per identified victim.

H.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of $1,000.00 per identified victim.

**2.  Applicable Figures**

The Victims' Compensation Fund should be calculated as follows:

VERIFIED COMPLAINT AND                    21
DEMAND FOR JURY TRIAL

a. <u>Step One.</u>  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: (the total number of units managed by the Defendant) **<u>times</u>** (the total number of months that the Defendant has managed housing subject to the FHA) **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** $10,000.00.

b. <u>Step Two.</u>  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: (the total number of units managed by the Defendant) **<u>times</u>** (the total number of months that the Defendant has managed housing subject to the FHA) **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** twelve (hours necessary to administer fund per victim) **<u>times</u>** $45.88.

c. <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should be calculated as follows: (the total number of units managed by the Defendant) **<u>times</u>** (the total number of months that the Defendant has managed housing subject to the FHA) **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** $1,000.00.

d. <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three.

**3.  Calculation of Victims' Compensation Fund**

Applying the underlying principles, as described above, and the applicable figures, as set forth above, the victims' compensation fund should be established in an amount to be determined

after all applicable figures are acquired from the Defendant through discovery in order to

compensate identified and as-of-yet unidentified victims.

VERIFIED COMPLAINT AND              23
DEMAND FOR JURY TRIAL